**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALYSSA SADWICK,<br><br>                                    Plaintiffs,<br><br>    -against-<br><br>THE CITY OF ROCHESTER, a municipal entity,<br>GEOFFREY QUINN, TYLER COUCH, MATTHEW<br>WEBSTER, "JOHN DOE" ROCHESTER POLICE<br>DEPARTMENT OFFICERS "1–200", (names and number of<br>whom are unknown at present), TODD BAXTER,<br>"RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names<br>and number of whom are unknown at present), and other<br>unidentified members of the Rochester Police Department and<br>Monroe County Sheriff's Office,<br><br>                               Defendants. | Case No. 21-cv-6730 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF SHERIFF TODD BAXTER AND
RICHARD ROE SHERIFF'S DEPUTIES**

**John P. Bringewatt, Monroe County Attorney**
Maria E. Rodi
Adam M. Clark
Deputy County Attorneys
307 County Office Building, 39 W. Main Street
Rochester, New York 14614
585.753.1495
mariarodi@monroecounty.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................1

THE PLEADINGS...........................................................................................1

ARGUMENT ................................................................................................. 2

I. Standard For Dismissal Pursuant To Fed. R. Civ. P. 12(b)(6) ...................................... 2

II. Sixth Claim for Relief – Assault and Battery Under New York Law ............................ 3

III. Seventh Claim for Relief – §1983 Excessive Force  .................................... 5

IV. Eighth Claim for Relief – §1983 First Amendment ..................................... 8

V. Ninth Claim for Relief – §1983 Failure to Intervene.................................... 10

VI. Tenth Claim for Relief – Negligence Against Sheriff Baxter .................................... 11

VII. Twelfth Claim for Relief – Negligence Against Individual Defendants...................18

VIII. Claims for Relief Against Sheriff Baxter In His Official Capacity ........................20

CONCLUSION  ........................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Adamou v. Cty. of Spotsylvania, Virginia*, No. 12-cv-7789,
2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ....................................................................6

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)..............................................................11

*Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420 (2013) .........................................14, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................2, 3, 20

*Atuahene v. City of Hartford*, 10 Fed.Appx. 33 (2d Cir. 2001) ......................................6, 7

*Barr v. Albany County,* 50 N.Y.2d 247 (1980)..................................................................12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................... 2, 20

*Boyler v. City of Lackawanna*, 287 F.Supp.3d 308 (W.D.N.Y. 2018)
*aff'd,* 765 F. App'x 493 (2d Cir. 2019)...............................................................................3

*Brinn v. Syosset Pub. Libr.,* 624 F.App'x 47 (2d Cir. 2015) (summary order) ..................8

*Bryant v. Ciminelli,* 267 F.Supp.3d 467 (W.D.N.Y. 2017) ..............................5, 13, 18, 20

*Case v. City of New York*, 233 F.Supp.3d 372 (S.D.N.Y. 2017) .......................................11

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002).........................................16

*Charkhy v. Altman,* 252 A.D.2d 413 (1st Dept. 1998) .......................................................4

*Clayton v. City of Poughkeepsie,* 06-cv-4881,
2007 WL 2154196 (S.D.N.Y. June 21, 2007) ..................................................................18

*Colombo v. O'Connell,* 310 F.3d 115 (2d Cir. 2002) .........................................................8

*DeLuca v. AccessIT Group, Inc.,* 695 F.Supp.2d 54 (S.D.N.Y. 2010) .............................16

*De Ratafia v. Cty. of Columbia*, 13-cv-174,
2013 WL 5423871 (N.D.N.Y. Sept. 26, 2013).....................................................................3

*Dinger v. Cefola,* 133 A.D.3d 816 (2d Dept. 2015).......................................................4, 5

*Dorsett v. Cty. of Nassau,* 732 F.3d 157 (2d Cir. 2013) ....................................................8

*Edrei v. City of New York,* 254 F.Supp.3d 565 (S.D.N.Y. 2017),
*aff'd sub nom. Edrei v. Maguire,* 892 F.3d 525 (2d Cir. 2018) ............................13, 18, 20

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ......................................................9

*Girard v. Howard,* 19-cv-673S, 2021 WL 1737758 (W.D.N.Y. May 3, 2021) ..........11, 22

*Graham v. City of New York*, 928 F.Supp.2d 610 (E.D.N.Y. 2013)....................................3

*Hemphill v. Schott,* 141 F.3d 412 (2d Cir. 1998) ................................................................6

*Houghton v. Cardone*, 295 F.Supp.2d 268 (W.D.N.Y. 2003) ............................................3

*Humphrey v. Landers,* 344 Fed.App'x. 686 (2d Cir. 2009)................................................3

*Jeffes v. Barnes,* 208 F.3d 49 (2d Cir. 2000) ...................................................................16

*Jones v. Parmley,* 465 F.3d 46 (2d Cir. 2006) ...................................................................6

*Kentucky v. Graham*, 473 U.S. 159 (1985)........................................................................20

*Kuck v. Danaher,* 600 F.3d 159 (2d Cir. 2010) ..................................................................9

*Kuczinski v. City of New York,* 352 F.Supp.3d 314 (S.D.N.Y. 2019)..................................9

*Lamb v. Baker,* 152 A.D.3d 1230 (4th Dept. 2017)..........................................................12

*Lauer v. City of New York,* 95 N.Y.2d 95 (2000) ..............................................................14

*Leneau v. Ponte*, No. 16-CV-776-GHW,
2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) ........................................................................6

*Lin v. Cty. of Monroe*, 66 F.Supp.3d 341 (W.D.N.Y. 2014)................................................3

*Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209 (2d Cir. 2002) ..........................20

*MacPherson v. Town of Southampton,* 738 F.Supp.2d 353 (E.D.N.Y. 2010)....................9

*McLean v. City of New York*, 12 N.Y.3d 194 (2009)......................................13, 14, 18, 19

*Missel v. Cty. of Monroe,* No. 07-CV-6593, 2008 WL 2357637
(W.D.N.Y. June 4, 2008), *aff'd*, 351 F.App'x 543 (2d Cir. 2009) (summary order) ........21

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)........................................................20

*Morgan v. Cty. of Nassau,* 720 F.Supp.2d 229 (E.D.N.Y. 2010) .......................................6

*Poe v. Leonard,* 282 F.3d 123 (2d Cir. 2002) .......................................................5

*Polk Cty. v. Dodson*, 454 U.S. 312 (1981) ...........................................................21

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) ..............................................21

*Seiden v. Sonstein,* 127 A.D.3d 1158 (2d Dept. 2015) ........................................12

*Snider v. Dylag*, 188 F.3d 51 (2d Cir. 1999) ..........................................................7

*Spear v. Town of W. Hartford,* 954 F.2d 63 (2d Cir. 1992) ...................................8

*Spring v. Allegany-Limestone Cent. Sch. Dist.*,
138 F. Supp. 3d 282 (W.D.N.Y. 2015) *vacated in part on unrelated grounds*,
655 Fed. App'x. 25 (2d Cir. 2016) ..........................................................................7

*Tango v. Tulevech*, 61 N.Y.2d 34 (1983) .............................................................14

*Tardif v. City of New York,* 991 F.3d 394 (2d Cir. 2021) .......................................4

*Valdez v. City of New York*, 18 N.Y.3d 69 (2011) .........................................14, 18

*Velez v. City of N.Y.,* 730 F.3d 128 (2d Cir. 2013) ..............................................12

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) .......................................................7

*Vossler v. Phasecom Am., Inc.*, No. 04-CV-128S,
2004 WL 1628903 (W.D.N.Y. July 19, 2004) ........................................................3

*Williams v. Smith,* 781 F.2d 319 (2d Cir. 1986) ....................................................5

*Williams v. Town of Greenburgh*, 535 F.3d 71 (2d Cir. 2008) ..............................8

## Statutes

42 U.S.C. § 1983 ........................................................................................ 1, 3, 8, 10

42 U.S.C. § 1985 ......................................................................................................8

Fed. R. Civ. P. Rule 8 .............................................................................................2

Fed. R. Civ. P. Rule 12 ........................................................................................1, 2

## PRELIMINARY STATEMENT

Defendants Sheriff Todd Baxter and "Richard Roes" 1-200 (purportedly Monroe County Sheriff's deputies) seek to dismiss the complaint in this action (the "Complaint") in its entirety and with prejudice, pursuant to Fed. R. Civ. P. Rule 12(b)(6), as against the Sheriff and his deputies, based on a failure to state a cause of action against these defendants.

## THE PLEADINGS

Plaintiff Alyssa Sadwick brought this lawsuit against the City of Rochester, three individually-named Rochester Police Department ("RPD") officers, Sheriff Todd Baxter, and John Does who are purportedly RPD officers and/or Monroe County Sheriff's deputies. Plaintiff alleges the following mix of federal and state Claims for Relief against the Sheriff and/or the Sheriff's deputies: assault and battery, excessive force, First Amendment violations, failure to intervene, as well as two claims of negligence. Each of these Claims for Relief are the subject this motion.

Plaintiff's counsel has brought a number of lawsuits stemming from protests that occurred in the City of Rochester in 2020. *See, e.g., Hall, et al. v. Warren, et al.,* Case No. 21-cv-6296. In these lawsuits, the focus has been on the City of Rochester and the RPD. Many of these cases have alleged a long history of purportedly unconstitutional policies, practices, and customs, on the part of the City and the RPD. Similarly, throughout all of these complaints the Sheriff and his deputies have been relegated to the status of an afterthought, with nowhere near the historical depth or focus on details or past protests or past relevant policies that the Plaintiffs have devoted to their claims against the City. The clear basis and purpose of these lawsuits has everything to do with the City and RPD, and virtually nothing to do with the Sheriff and his deputies.

As a result, the pleadings in these cases have often added on the Sheriff and his deputies as almost an afterthought. That is blatantly clear in Plaintiff's Complaint herein. The Complaint

alleges incidents of purportedly "unreasonable and discriminatory use of force" on the part of the RPD going back over a decade. (Comp. ¶66.) In contrast, unable to make any such allegations against the Sheriff or his deputies, Plaintiff makes the absurd allegation that a Hazard Mitigation Plan created by the Monroe County Office of Public Safety is actually a training policy utilized by the Sheriff, and then asks the Court to adopt an equally absurd reading of the document's contents. (Comp. ¶¶ 77-84.) Plaintiff is clearly grasping at straws in an unsuccessful attempt to make allegations against the Sheriff and his deputies.

Moreover, the allegations against the Sheriff's deputies have consistently been general and vague, and such is continued in Plaintiff's Complaint. No particular act is imputed to any deputy, nor is any deputy identified or described in any way. Instead, allegations are simply against "RPD officers and/or Sheriff's deputies."

With that in mind, and for the reasons set forth below, the Complaint should be dismissed in its entirety, as against the Sheriff and his deputies, with prejudice.

## ARGUMENT

### I. Standard for Dismissal Pursuant to Fed. Civ. P. 12(b)(6)

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). However, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not suffice. … Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556

2

U.S. 662, 678 (2009) (internal citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678 (internal citations omitted).

Significantly, though Rule 8 does not require excessive detail to meet pleading standards, "a civil rights complaint *must still allege facts*." *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y. 2003) (emphasis in original); *Vossler v. Phasecom Am., Inc.*, No. 04-CV-128S, 2004 WL 1628903 at *1 (W.D.N.Y. July 19, 2004) (finding that Rule 8 pleading requirement not met when, "no specifics are provided concerning the conduct that allegedly constituted" the legal claim alleged in the complaint).

## II.  Sixth Claim for Relief – Assault and Battery Under New York Law

Plaintiff's Sixth Claim for Relief alleges a New York State law claim of assault and battery against Sheriff Baxter (in his individual capacity) and the unnamed RPD officers and Sheriff's deputies. This Claim for Relief should be dismissed because she has failed to allege that any individual Sheriff's deputy was actually involved in any use of force against them.

"Federal excessive force claims and state law assault and battery claims against police officers are nearly identical." *Graham v. City of New York*, 928 F.Supp.2d 610, 624–25 (E.D.N.Y. 2013), citing *Humphrey v. Landers,* 344 Fed.App'x 686, 688 (2d Cir. 2009); *see also Lin v. Cty. of Monroe*, 66 F.Supp.3d 341, 355-56 (W.D.N.Y. 2014) (dismissing claims, including for assault and battery, against Deputy who was not present at the time of the use of force).

"In the absence of factual allegations establishing that [the Sheriff's deputies were] personally involved in the alleged state law torts of assault, battery, false arrest, intentional infliction of emotional distress and negligent infliction of emotional distress, these claims . . . also fail to state a cause of action under New York law." *De Ratafia v. Cty. of Columbia*, 13-cv-174, 2013 WL 5423871, at *9 (N.D.N.Y. Sept. 26, 2013); *see also Boyler v. City of Lackawanna*, 287

F.Supp.3d 308, 326 (W.D.N.Y. 2018) *aff'd,* 765 F.App'x 493 (2d Cir. 2019) ("Accordingly, because there is no evidence that the Individual Defendants effectuated Plaintiff's arrest . . . the fact that Plaintiff was arrested fails to raise an issue of material fact in support of his common law assault and battery claims).

First, there are no allegations, whatsoever, that Sheriff Baxter was "personally involved" in any use of force against Plaintiff. Moreover, no specific act is alleged on the part of any Sheriff's deputy, and no individual Sheriff's deputy has been named, identified, or even described as having been violent with Plaintiff. Thus, Plaintiff has failed to plead the required personal involvement.

Additionally, Plaintiff failed to adequately allege intentional conduct – an essential element of an assault claim and a battery claim. *See Tardif v. City of New York,* 991 F.3d 394, 410 (2d Cir. 2021) ("[C]ivil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact,'" and "civil battery 'is an intentional wrongful physical contact with another person without consent.'"), quoting *Charkhy v. Altman,* 252 A.D.2d 413 (1st Dept. 1998). While the Court must generally "liberally construe the complaint, accept all facts as alleged in the pleading to be true . . . [and] accord the plaintiff the benefit of every favorable inference" on a CPLR § 3211(a)(7) motion to dismiss, "factual claims which are flatly contradicted by the record are not presumed to be true." *Dinger v. Cefola,* 133 A.D.3d 816, 817 (2d Dept. 2015).

Here, Plaintiff alleges that the law enforcement response at the protests was "indiscriminate." (*See, e.g.,* Comp. ¶33 ("On September 2-6, 2020, the defendants responded to peaceful protests with extreme violence – including the indiscriminate use of … supposedly "less-than-lethal" munitions"); ¶34 ("Chemical weapons, like tear gas, are banned in warfare because they are indiscriminate weapons by design"); ¶103 ("Baxter breached his duty to keep demonstrators safe by, among other things, training his Sheriff's Deputies to use chemical weapons

indiscriminately against protesters"). These allegations belie any claim that law enforcement intentionally engaged in unlawful conduct against Plaintiff.

Ultimately, Plaintiff's allegations of apparently intentional conduct – which are "flatly contradicted by the record" – are not entitled to a presumption of truth. *See Dinger,* 133 A.D.3d at 817.

Based on the foregoing, Plaintiff's Sixth Claim for Relief should be dismissed as against the Sheriff's deputies.

## III.  Seventh Claim for Relief – §1983 Excessive Force

Plaintiff's Seventh Claim for Relief alleges excessive force in violation of the Fourth and Fourteenth Amendments. Specifically, Plaintiff alleges that she was subjected to excessive force by the use of pepper balls, pepper spray, and tear gas in response to protests. (Comp. ¶148.)

First, Sheriff Baxter is not alleged to have committed any act of force against Plaintiff, and he cannot be liable for any acts alleged to have been committed by his deputies, as a matter of law. *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002) (a "supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort").

Further, Plaintiff has failed to allege the Sheriff's personal involvement in any of the alleged constitutional violations, which is fatal to Plaintiff's pleading as against the Sheriff in his individual capacity. *See Bryant v. Ciminelli,* 267 F.Supp.3d 467, 475 (W.D.N.Y. 2017) ("A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under §1983"), citing *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).

Plaintiff has also failed to sufficiently plead a claim against the Sheriff's deputies under either the Fourth or Fourteenth Amendment.

"The Fourth Amendment protects individuals from the government's use of excessive force *when detaining or arresting individuals*." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006) (emphasis added); *see also Morgan v. Cty. of Nassau,* 720 F.Supp.2d 229, 237 (E.D.N.Y. 2010) ("Generally, the Second Circuit has held that courts should analyze an excessive force claim related to an arrest or seizure under the Fourth Amendment, and analyze all other excessive force claims under the Fourteenth Amendment"), citing *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir. 1998). Plaintiff's Complaint contains insufficient allegations a Sheriff's deputy effectuated the detention or arrest of Plaintiff.

Additionally, Plaintiff's Complaint contains impermissible "group pleading" with respect to the Sheriff's deputies. As a general pleading requirement, "[a]lthough Federal Rule of Civil Procedure 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (internal quotation omitted).

Significantly, a complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct ... fail[s] to satisfy this minimum standard." *Id.*; *see also Leneau v. Ponte*, No. 16-CV-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim") (internal quotation omitted); *Adamou v. Cty. of Spotsylvania, Virginia*, No. 12-cv-7789, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016) ("Pleadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim").

6

Notably, the prohibition of "group pleading" applies to §1983 claims. *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F.Supp.3d 282, 293 (W.D.N.Y. 2015), *vacated in part on unrelated grounds*, 655 Fed.App'x 25 (2d Cir. 2016) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under §1983, a plaintiff cannot rely on a group pleading against all defendants *without making specific individual factual allegations*") (emphasis added).

A plaintiff seeking relief under §1983, "must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted). Significantly, the *personal involvement* of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

Here, Plaintiff fails to allege the Sheriff's or any of his deputies' personal involvement in any alleged constitutional violations. No specific acts are alleged on the part of any Sheriff's deputy, nor has any individual Sheriff's deputy been named, identified, or even described as having violated Plaintiff's constitutional rights.

Throughout the entirety of the Complaint, Plaintiff alleges only that "RPD officers and/or Sheriff's Deputies" committed acts against her. In this manner of pleading, Plaintiff impermissibly "lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct," thereby failing the "minimum standard for pleading." *Atuahene,* 10 Fed.App'x 33.

Based on the above, Plaintiff's Seventh Claim for Relief should be dismissed as against the Sheriff's deputies.

## IV.  Eighth Claim for Relief -- §1983 First Amendment

Plaintiff's Eighth Claim for Relief alleges a violation of her First Amendment rights –

including retaliation – against all defendants.[1]

> To state a claim under Section 1983, a plaintiff must allege facts indicating that
> some official action has caused the plaintiff to be deprived of his or her
> constitutional rights—in other words, there is an injury requirement to state the
> claim. . . . *[P]laintiffs who allege a violation of their right to free speech must prove
> that official conduct actually deprived them of that right.* To prove this deprivation,
> [Plaintiffs] must come forward with evidence showing either that (1) defendants
> silenced [them] or (2) 'defendants' actions had some actual, non-speculative
> chilling effect on [their] speech.

*Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (emphasis added) (internal

citations omitted, quoting *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir. 2002), citing *Spear*

*v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir.1992) (upholding dismissal where complaint

failed "to show that defendants 'inhibited him in the exercise of his First Amendment freedoms'");

*see also Brinn v. Syosset Pub. Libr.,* 624 F. App'x 47, 49 (2d Cir. 2015) (summary order).

In the protest context, First Amendment claims typically arise as a "retaliation" claim. "To

plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by

the First Amendment; (2) the defendant's actions were motivated or substantially caused by his

exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of

Nassau,* 732 F.3d 157, 160 (2d Cir. 2013).

Significantly, "[i]n order to survive a motion to dismiss, a claim of retaliation under Section

1983 'must be supported by specific and detailed factual allegations, not stated in wholly

---

[1] Plaintiff's Claim for Relief states that it also alleges a conspiracy (Comp. ¶155), but the Claim
for Relief is expressly brought pursuant to 42 U.S.C. §1983 and not 42 U.S.C. §1985. Accordingly,
Plaintiff's purported conspiracy claim is not addressed herein. If the Court were to determine that
a conspiracy claim is attempted to be pled, it is the Sheriff and his deputies' position that
no elements of a conspiracy pursuant to §1985 are pled in Plaintiff's Third Claim for Relief and any
claim of conspiracy should, therefore, be dismissed.

conclusory terms.'" *MacPherson v. Town of Southampton,* 738 F.Supp.2d 353, 369 (E.D.N.Y. 2010), quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).

> An essential element of a Section 1983 claim, including a claim of retaliation in violation of the First Amendment, is that some official action has caused the plaintiff to be deprived of his or her constitutional rights – in other words, there is an injury requirement to state the claim. … The Second Circuit has explained that plaintiffs who allege a violation of their right to free speech must provide that official conduct actually deprived them of that right. Therefore, to properly allege a claim for First Amendment retaliation, a plaintiff must show that his First Amendment rights were actually chilled.

*MacPherson,* 738 F.Supp.2d at 369 (internal citations omitted).

Here, Plaintiff has failed to allege, as required, that any action taken by the Sheriff or his deputies deprived Plaintiff of her rights under the First Amendment, nor has Plaintiff alleged that she was unable to protest or stopped protesting as a result of an action taken by the Sheriff. Indeed, the Complaint explains that Plaintiff protested for hours, returning multiple days. (Comp. ¶¶ 36-53.) Moreover, there is no allegation that the Sheriff or his deputies prevented Plaintiff from protesting by arrest, detainment, or otherwise.

Because the Complaint fails to allege – as it is required to do – factual assertions "setting forth specific instances in which [Plaintiffs] desired to exercise [their] First Amendment rights but [were] chilled by [the Sheriff's Deputies'] conduct," it fails as a matter of law. *MacPherson,* 738 F.Supp.2d at 369-70; *see also Kuck v. Danaher,* 600 F.3d 159, 168 (2d Cir. 2010) (retaliation claim fails when "nothing in complaint suggests that Kuck's speech was actually chilled as a result of the DPS officer's statements") (internal quotations omitted).

Furthermore, Plaintiff failed to allege that the Sheriff or his deputies retaliated against her for exercising her free speech rights, *i.e.,* retaliatory animus. *See Kuczinski v. City of New York,* 352 F.Supp.3d 314, 321-22 (S.D.N.Y. 2019) ("A plaintiff asserting a violation of [free speech] . . . provisions must allege that the plaintiff (1) has engaged in a protected First Amendment activity,

(2) suffered an adverse action, and (3) *there was a causal connection between the protected activity and the adverse action*") (emphasis added). The Complaint is clear that all of the protests in question were directed at the policies and actions and history of the Rochester Police Department (Comp. ¶¶ 31-32); Plaintiff has not credibly alleged that the Sheriff or his deputies had any reason to retaliate against Plaintiff.

The Claim for Relief also fails as against the Sheriff's deputies on similar grounds as Plaintiff's excessive force claim – the use of impermissible group pleading. The Court is respectfully directed to pages 6-7 above, which set forth the reasons why group pleading in support of §1983 claims of constitutional violation are grounds for dismissal of the pleading.

Here, the Complaint fails to make out a violation of Plaintiff's First Amendment rights against the Sheriff's deputies because it fails to specifically plead any direct involvement by any deputy in the alleged violations and impermissibly group pleads against the deputies.

For these reasons, Plaintiff's Third Claim for Relief should be dismissed as against the Sheriff and his deputies.

## V.  Ninth Claim for Relief -- §1983 Failure to Intervene

In her Ninth Claim for Relief, Plaintiff alleges that the RPD officers and/or Sheriff's deputies failed to intervene in the alleged violation of Plaintiff's constitutional rights.

This Claim for Relief of "failure to intervene" should be dismissed as to the Sheriff's deputies for the same reasons as with the other §1983 claims above – Plaintiff has failed to allege that any individual Sheriff's deputy witnessed any actual violation of rights or had any realistic opportunity to intervene in any violation of rights.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." *Case v. City of New York*, 233 F.Supp.3d 372, 401–03

(S.D.N.Y. 2017), quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994):

> An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested or (3) that any constitutional violation has been committed by a law enforcement official. However, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.

*Id.*

Here Plaintiff has failed to plausibly allege that any of the Sheriff's deputies actually witnessed any violation of Plaintiff's rights and similarly failed to allege that any of the deputies had a realistic opportunity to intervene in any alleged violations. Rather, as shown above, the allegations vaguely allege that "RPD Officers and/or MCSO Deputies" acted against Plaintiff – there is no definite allegation that a Sheriff's deputy was actually present or witnessed any alleged act against Plaintiff. Since the allegations of the Complaint are that the protests ranged over different nights and different areas within the City of Rochester, this simple group pleading is not enough to sustain the allegation that the Sheriff's deputies had a duty to intervene.

Therefore, Plaintiff's Ninth Claim for Relief, for failure to intervene, should be dismissed as against the Sheriff's deputies.

## VI.   Tenth Claim for Relief – Negligence Against Sheriff Baxter

Plaintiff's Fifth Claim for Relief alleges negligence against Sheriff Baxter, presumably under New York law. Specifically, Plaintiff alleges that Sheriff Baxter was negligent in the training, supervision, and discipline of his deputies in overseeing MCSO's response to the protests.

First, to the extent the Claim for Relief is brought against the Sheriff in his individual capacity, it must be dismissed. *See Girard v. Howard,* 19-cv-673S, 2021 WL 1737758, at \*9

(W.D.N.Y. May 3, 2021) (dismissing personal capacity claim against sheriff when alleged "personal involvement" arose from sheriff's official duties, *e.g.,* setting policy).

Though a Sheriff is not liable for the torts of his or her individual deputies, New York law permits a claim of negligence against a Sheriff where it is shown that deputies lacked proper training in law enforcement techniques and that direct supervision by the Sheriff could have altered the consequences of the deputies' actions. *Barr v. Albany County,* 50 N.Y.2d 247, 258 (1980).

But this claim survives only if it is shown that the alleged tortfeasor acted outside the scope of their employment. *See Velez v. City of N.Y.,* 730 F.3d 128, 136 (2d Cir. 2013) ("to maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment") (quotations omitted). Moreover, a plaintiff must show that the employer, "was aware of, or reasonably should have foreseen, the [deputies'] propensity to commit such act[s]." *Lamb v. Baker,* 152 A.D.3d 1230, 1231 (4th Dept. 2017), quoting *Seiden v. Sonstein,* 127 A.D.3d 1158, 1160-61 (2d Dept. 2015) ("An employer may be liable for a claim of negligent hiring or supervision if an employee commits an independent act of negligence outside the scope of employment and the employer was aware of, or reasonably should have foreseen, the employee's propensity to commit such an act") (quotations omitted).

Plaintiff has failed to meet these pleading burdens. First, Plaintiff failed to allege that the Sheriff's deputies engaged in independent acts of negligence outside the scope of their employment. In fact, Plaintiff affirmatively alleges that, "[a]t all relevant times, [the Sheriff's deputies] were acting *within the scope of their employment* with the County and under Sheriff Baxter… ." (Comp. ¶6.) (Emphasis added.)

Moreover, the Complaint is devoid of allegations, "sufficient to infer that . . . [Sheriff

Baxter] knew of the [Sheriff's deputies'] ... propensity to act in the manner alleged." *See Edrei v. City of New York,* 254 F.Supp.3d 565, 583-84 (S.D.N.Y. 2017), *aff'd sub nom. Edrei v. Maguire,* 892 F.3d 525 (2d Cir. 2018). There is no indication that, for example, Sheriff Baxter ever received prior complaints involving Sheriff's deputies' use of crowd control measures or "chemical or militarized" weapons. Absent such allegations, Plaintiff's claim for negligent supervision and training against Sheriff Baxter must be dismissed. *See id.* (dismissing negligent training and supervision claim where plaintiffs did not allege "that defendant [employer] ... knew of the defendant officers' propensity to act in the manner alleged, namely using a powerful sound magnifier in an unnecessarily forceful manner [during a protest]").

This Claim for Relief should also be dismissed for failure to allege a special duty to Plaintiff:

> [A]n agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public. Such a duty, we have explained – a duty to exercise reasonable care toward the plaintiff – is born of a special relationship between the plaintiff and the governmental entity.
> . . .
>
> A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.

*McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009) (internal citations omitted); *see also Bryant v. Ciminelli*, 267 F.Supp.3d 467, 479 (W.D.N.Y. 2017).

> It is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself. In situations where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity.

*Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013), citing *Lauer v. City of New York*, 95

N.Y.2d 95, 100 (2000); *Valdez v. City of New York*, 18 N.Y.3d 69, 75 (2011); *see also Bryant*, 267

F.Supp.3d at 479. Here, Plaintiff has not alleged any special duty or special relationship that would

differentiate Plaintiff from the public at large or that would require specific, special training with

regard to her.

 The Claim for Relief should also be dismissed because the Sheriff is protected by the

government function immunity defense.

> [T]he common-law doctrine of governmental immunity continues to shield public
> entities from liability for discretionary actions taken during the performance of
> governmental functions.
> . . .
> [E]ven if a plaintiff establishes all elements of a negligence claim, a state or
> municipal defendant engaging in a governmental function can avoid liability if it
> timely raises the defense and proves that the alleged negligent act or omission
> involved the exercise of discretionary authority.

*Valdez,* 18 N.Y.3d at 75-76; *see also Lauer,* 95 N.Y.2d at 99. Taking the special duty and the

discretionary immunity defenses together:

> [T]he rule that emerges is that 'government action, if discretionary, may not be a
> basis for liability, while ministerial actions may be, but only if they violate a special
> duty owed to the plaintiff, apart from any duty to the public in general.

*Valdez*, 18 N.Y.3d at 76-77, quoting *McLean,* 12 N.Y.3d at 203. A discretionary government

action is one which involves, "the exercise of reasoned judgment which could typically produce

different acceptable results." *Valdez*, 18 N.Y.3d at 80, quoting *Tango v. Tulevech*, 61 N.Y.2d 34,

41 (1983).

 Here Plaintiff alleges that Sheriff Baxter was negligent in, "training, supervision and

discipline of the Defendant Sheriff's Deputies." (Comp. ¶171.) Clearly this allegation is of a

protected discretionary government function, and in fact the allegations themselves show that there

were possible "different acceptable results." Plaintiff alleges:

> BAXTER had a duty to ensure that his Sheriff's Deputies were properly trained in policing peaceful protests and other large demonstrations, to keep the participants safe [and to] promote First Amendment expression.

(Comp. ¶172.) Obviously from the Complaint itself there are multiple different acceptable ways for the Sheriff to police protests. Therefore since the negligence alleged against Sheriff Baxter was for the performance of a discretionary government function, the Sheriff is protected by the government function immunity defense.

This Claim for Relief should also be dismissed because the Complaint alleges that Sheriff Baxter trained his deputies improperly based on a document that is not what Plaintiff attempts to claim it is. Specifically, Plaintiff's negligence claim is based on the Sheriff's alleged reliance upon a document called a Hazard Mitigation Plan in training his deputies. (Comp. ¶¶ 77-84.) This allegation is wildly misplaced and demonstrably false.

On its face, the Hazard Mitigation Plan is not even remotely such a policy and, in particular, Plaintiff's reliance upon it is clearly misleading and disingenuous. The introduction to the Hazard Mitigation Plan explains the Plan and its purpose:

> In response to the requirements of the Disaster Mitigation Act of 2000 (DMA 2000), Monroe County (and its towns and villages) developed this All-Hazard Mitigation Plan (HMP), which is an update of the 2011 Monroe County MultiJurisdictional HMP. DMA 2000 amends the Stafford Act and is designed to improve planning for, response to, and recovery from disasters by requiring state and local entities to implement pre-disaster mitigation planning, and develop HMPs. The Federal Emergency Management Agency (FEMA) has issued guidelines for HMPs, and the New York State Division of Homeland Security and Emergency Services (NYS DHSES) also supports plan development for jurisdictions in New York State.
>
> Specifically, DMA 2000 requires that states, with support from local governmental agencies, update HMPs on a 5-year basis to prepare for and reduce the potential impacts of natural hazards. DMA 2000 is intended to facilitate cooperation between state and local authorities, prompting them to work together. This enhanced planning process will better enable local and state governments to articulate accurate needs for mitigation, resulting in faster allocation of funding and more effective risk reduction projects.

15

Available      at:       https://www.monroecounty.gov/files/oem/2017/04%20Section%201%20-%20

Introduction%20Apr17.pdf. [2]

 This clearly has nothing to do with training for Sheriff's deputies for responding to a protest. The specific part of the Hazard Mitigation Plan quoted by the Plaintiffs, § 5.4.10, "Risk Assessment - Civil Unrest", does not in any way encourage or even deal with use of force in response   to   protests.   *See*   https://www.monroecounty.gov/files/oem/2017/20%20Section% 205.4.10-Civil%20Unrest%20Apr17.pdf. The Hazard Mitigation Plan – and in particular the *"Risk Assessment,"* – simply makes the observation that sometimes, in some cases, peaceful protests can become violent. This clearly does not provide adequate support for the allegation that this document is the basis of the Sheriff's alleged improper training of his deputies.

 Furthermore, the Hazard Mitigation Plan is created by Monroe County's Office of Emergency Management, which is directed by the County's Deputy Director of Public Safety & County Emergency Manager, a position appointed by the County Executive. Under the Monroe County Charter, the County Executive has supervision and control over County agencies with heads appointed by the County Executive only, not independent elected officials such as the Sheriff. Monroe County Charter Art. III, §C3-2(A)(7); *see also Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000) (whether municipal officer is policymaker in a given area is question of law for the court). Therefore the County's Hazard Mitigation Plan, promulgated by the County Office of

---

[2] Plaintiff cites at length from the Mitigation Plan and rely upon it for her allegation of the existence of an official municipal policy for purposes of municipal liability. Accordingly, the Court can consider its contents without converting this motion to one for summary judgment. *See DeLuca v. AccessIT Group, Inc.,* 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) ("extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint"), citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-153 (2d Cir. 2002).

Emergency Management, cannot be said to be a policy of the Sheriff or applicable to Sheriff's deputies in their training.

The Hazard Mitigation Plan is a document created by the County's Office of Emergency Management, pursuant to statutory obligations that, in part, discusses potential risks to the County, including that of possible civil unrest – both peaceful and violent. Indeed, the introductory paragraph to the Risk Assessment – Civil Unrest section states, "[t]he following section presents the hazard profile … and vulnerability assessment for the civil unrest hazard in Monroe County." There is no good faith argument that this document is used to train Sheriff's deputies in protest response.

Thus, Plaintiff's allegation that, "Baxter is responsible for implementing the Hazard Mitigation Plan, and trains his Sheriff's Deputies in accordance with its mandates" (Comp. ¶79) is absurd, disingenuous, and created out of whole cloth, as the Hazard Mitigation is on its face neither a policy nor a mandate, nor is it created by or in any way related to the Sheriff and the training of his deputies.

Plaintiff's allegations regarding the contents of this document are equally as disingenuous. For instance, Plaintiff alleges that a reference to "civil disturbance" as potentially including, "peaceful demonstrations or acts of violence" means that, "Baxter falsely conflate[es] 'peaceful demonstrations' and peaceful protests with 'acts of violence.'" (Comp. ¶81.)

Similarly, Plaintiff's allegation that, because of the Hazard Mitigation Plan, the Sheriff's deputies are not trained to draw a meaningful distinctions between peaceful demonstrations and violent mobs (Comp. ¶80) is wholly disingenuous and demonstrably false.

Put simply, Plaintiff's allegations that this document is policy of the County or Sheriff, that the Sheriff's deputies are trained improperly based on this document, and that the Sheriff is

therefore liable to Plaintiff for negligence do not pass the straight-face test and should be dismissed by the Court.

Based on the above, Plaintiff's Claim for Relief alleging a failure to train, supervise, or discipline against Sheriff Baxter should be dismissed.

## VII.   Twelfth Claim for Relief – Negligence Against Individual Defendants

Plaintiff's Twelfth Claim for Relief alleges negligence against unnamed RPD officers and Sheriff's deputies in their response to the protests from September 2-6, 2020.

First, this Claim for Relief should be dismissed because it improperly contradicts the intentional conduct also alleged in Plaintiff's Complaint.

> Defendants contend that because Plaintiffs have alleged intentional conduct on the part of Defendants [in addition to a common law negligence claim] they cannot also allege negligen[t] conduct for the same action. Plaintiffs [*sic*] are correct: under New York State law, "when a plaintiff brings excessive force . . . claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."

*Edrei,* 254 F.Supp.3d at 582-83, quoting *Clayton v. City of Poughkeepsie,* 06-cv-4881, 2007 WL 2154196, at *6 (S.D.N.Y. June 21, 2007). At the very least, to the extent Plaintiff's claims alleging intentional conduct survive this motion, this Claim for Relief must then be dismissed.

Additionally, this Claim for Relief should be dismissed for failure to plead a special duty to support a claim for negligence. "[A]n agency of government is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'" *Bryant,* 267 F.Supp.3d at 479, quoting *McLean,* 12 N.Y.3d at 199. "Under the public duty rule, although a municipality owes a general duty to the public at large to furnish police protection, this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created." *Valdez,* 18 N.Y.3d at 75.

18

A special duty requires a "special relationship between the plaintiff and the governmental entity." *McLean,* 12 N.Y.3d at 199.

> A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.

*McLean,* 12 N.Y.3d at 199.

Significantly, Plaintiff bears the burden of pleading and proving the existence of, "a special duty of care to the injured party because duty is an essential element of the negligence claim itself." *Applewhite,* 21 N.Y.3d at 426.

Here, Plaintiff alleges that Sheriff's deputies had two duties: to permit protesters to engage in First Amendment activities and protect them from harm or physical violence (Comp. ¶199) and to not use force against any individual protester in the absence of individualized cause or legal justification. (Comp. ¶200.) Neither of these establish a special duty under New York law.

There is no mention of a statutory duty enacted for the benefit of a particular class of persons, no allegations that the Sheriff voluntarily assumed a duty that Plaintiff justifiably relied upon, or an assumption of direction or control in the face of a known, blatant and dangerous safety violation. *See McLean,* 12 N.Y.3d at 199. Rather, Plaintiff alleges only that the Sheriff's deputies owed a general duty to not violate the constitutional rights of the public of people in the streets of Rochester. That is insufficient to establish a special duty; and any violation of the purported "duty" that Plaintiff alleges is properly brought as a claim of violation of constitutional rights, and *not* as a negligence claim.

Absent a special duty, Plaintiff's claim must be dismissed. "In situations where the plaintiff fails to meet this burden [of pleading a special duty], the analysis ends and liability may not be

imputed to the municipality that acted in a governmental capacity." *Applewhite,* 21 N.Y.3d at 426; *see also Bryant,* 267 F.Supp.3d at 479 (dismissing negligence claims against police chief and John Doe police officers for failure to plead special duty).

Moreover, this Claim for Relief should be dismissed as against the unnamed Sheriff's deputies because Plaintiff has failed to make out the elements of a negligence cause of action.

> To state a claim for negligence, under New York Law a plaintiff must show: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'

*Edrei*, 254 F.Supp.3d at 582–83, quoting *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). As with her other claims against the Sheriff's deputies, Plaintiff has simply failed to make out these elements as to any individual deputy. Instead, Plaintiff merely alleges that an unknown number of unnamed and unidentified RPD officers and Sheriff's deputies committed negligent acts against Plaintiff. (Comp. ¶¶ 198-204.)

Not only does this fail to plead the elements of negligence running from any Sheriff's deputy to Plaintiff, but it also fails to meet minimal notice pleading standards as to any Sheriff's deputy. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544; *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Accordingly, Plaintiff's Twelfth Claim for Relief should be dismissed as against the Sheriff's deputies.

## VIII.   Claims For Relief Against Sheriff Baxter In His Official Capacity

The Complaint alleges that the Claims for Relief against Sheriff Baxter are brought in both his individual and official capacity. (Comp. ¶5.) "Official capacity" suits are brought under §1983 and are essentially claims of municipal liability. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent'"), quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658,

690, n. 55 (1978); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself").

To the extent that any of Plaintiff's claims allege constitutional violations against Sheriff Baxter in his official capacity, they should each be dismissed for failure to plead municipal liability.

A §1983 claim against a municipality or other local government entity cannot be based on the doctrine of *respondeat superior, i.e.,* liability solely because the municipality or entity employs a tortfeasor. *Monell*, 436 U.S. 658. Such liability can only be found when the alleged constitutional deprivation results from an official policy or informal custom adopted by the municipality or entity. *Id.* Thus, to defeat the present motion, Plaintiff's pleading must set forth the existence of either an official policy or informal custom that has been adopted by the Sheriff.

Additionally, it is not enough to simply allege a policy; in order for there to be municipal liability, "official policy must be '*the moving force* of the constitutional violation'" *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (emphasis added), quoting *Monell,* 436 U.S. at 694.

Here the only alleged municipal policy that Plaintiff alleges in their Complaint is the County's Hazard Mitigation Plan. And, as explained at length above, the Hazard Mitigation is on its face not a municipal policy nor a policy of the Sheriff. (*See* pp. 15-18, above.)

Accordingly, because the Complaint fails to allege the fundamental elements of municipal liability, the Complaint as against Sheriff Baxter in his official capacity should be dismissed.

In this same vein, Plaintiff's request for punitive damages with respect to the Sheriff in his official capacity must be dismissed. In New York, punitive damages may not be alleged by a claimant against the State and its political subdivisions. *Missel v. Cty. of Monroe,* No. 07-CV-6593, 2008 WL 2357637 at *7 (W.D.N.Y. June 4, 2008), *aff'd*, 351 F. App'x 543 (2d Cir. 2009)

(summary order). This includes public officials sued in their official capacity. *Girard,* 2021 WL 1737758, at \*4 ("[punitive] damages are not appropriate for municipal employees acting in their official capacity").

## **CONCLUSION**

Plaintiff has failed to meet fundamental pleading requirements for their claims against the Sheriff and his deputies. The Court is therefore respectfully urged to dismiss the Complaint in its entirety as to the Sheriff and any Sheriff's deputy.

Dated: January 28, 2022                      RESPECTFULLY SUBMITTED,

John P. Bringewatt, Monroe County Attorney

By: s/ *Maria E. Rodi*
    Maria E. Rodi
    Adam M. Clark
    Deputy County Attorneys
    307 County Office Building, 39 W. Main Street
    Rochester, New York 14614
    585.753.1495
    mariarodi@monroecounty.gov